332 So.2d 827 (1976)
Rosalie SPAIN and Preston Broussard
v.
TRAVELERS INSURANCE COMPANY and Interstate Fire and Casualty Company.
No. 57170.
Supreme Court of Louisiana.
May 17, 1976.
Rehearing Denied June 18, 1976.
*828 Wood Brown, III, Montgomery, Barnett, Brown & Read, New Orleans, for defendants-applicants.
Roger C. Edwards, Abbeville, for plaintiffs-respondents.
*829 DENNIS, Justice.
This is a suit by a legal secretary and her husband to recover for her personal injuries sustained in an automobile accident caused by the negligence of her employer. The secretary, Rosalie Spain, and her husband, Preston Broussard, sued Travelers Indemnity Company and Interstate Fire and Casualty Company, the primary and excess liability insurers, respectively, of the driver of the automobile in which Mrs. Broussard was riding. Both the trial and intermediate appellate courts rendered judgments for plaintiffs. We granted defendants' applications for writs, and for the reasons hereinafter assigned we affirm in part and reverse in part.
The accident occurred about 3:30 p.m. on March 11, 1971 in Lafayette while Mrs. Broussard was riding as a passenger in the right front seat of an automobile which was owned and being driven by the attorney by whom she was employed. They were returning to his law office in Abbeville after having attended a conference in Lafayette with an internal revenue agent pertaining to a federal estate tax return which Mrs. Broussard was assisting her employer in preparing. After the accident the automobile was still operable and the attorney drove Mrs. Broussard back to his office in Abbeville. She completed her usual end of the day office chores and drove her own vehicle home.
Later she developed the symptoms which led to the discovery of the injuries giving rise to this lawsuit. However, the severity of the injuries, the amounts awarded below and the negligence of Mrs. Broussard's employer in causing her injuries are not at issue in this appeal.
Instead, the issue presented for our decision is whether the insurers should be absolved from liability because of an exclusion contained in one of the policies. The basic policy issued by Travelers Indemnity Company with a limit of $5,000 liability for bodily injury to one person contained the following exclusion:
"This policy does not apply under Part I:
"* * *
"(e) to bodily injury to any employee of the insured arising out of and in the course of (1) domestic employment by the insured, if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law, or (2) other employment by the insured;
"* * *."
In the excess policy issued by it, Interstate Fire and Casualty Company agreed to indemnify Mrs. Broussard's employer for the amount of loss in excess of the applicable limits of liability of the underlying insurance in the amount of $95,000 for bodily injury to one person.
However, the excess policy included the following provision:
"The provisions of the immediate underlying policy are incorporated as a part of this policy except for any obligation to investigate and defend and pay for costs and expenses incident to the same, the amount of the limits of liability, any `other insurance' provision and any other provisions therein which are inconsistent with the provisions of this policy."
Both insurers strenuously contend that because Mrs. Broussard's injuries arose out of and in the course of employment by the insured that coverage was excluded under each policy.
The trial court rejected these defenses and held in favor of plaintiffs on the theory that the policy provision excluded all employees incurring injuries within the course and scope of their employment if they were not eligible for workmen's compensation benefits, and that Mrs. Broussard was not so eligible because she was not engaged in a hazardous occupation.
The court of appeal reached the same result except that it did so by concluding *830 the exclusion was invalid because it was ambiguous. The court reasoned that because the insurer had written the ambiguous exclusionary clause, that clause should be construed in the sense most favorable to the insured by rendering it inoperative as to Mrs. Broussard.
We cannot subscribe to the rationale employed by either court below. The exclusion is neither ambiguous as found by the court of appeal nor susceptible to the strained interpretation given it by the trial court. A reading of the exclusion, particularly in light of the numbering used to set off the clauses therein, leaves no doubt as to its meaning: all employees of an insured injured in the course and scope of their employment are excluded from coverage under the policy unless they are domestic employees who are not covered by workmen's compensation.
In Manuel v. Liberty Mutual Insurance Company, 256 La. 480, 236 So.2d 807 (1970), we held that the test to be applied in determining whether an employee's injuries were sustained in the course and scope of his employment within the terms of an exclusionary clause similar to the one involved here is the same test which is applied in determining whether the employee was injured in the course of his employment so as to entitle him to workmen's compensation. In his dissent to the court of appeal opinion in the instant case, Judge Hood ably reviewed the applicable workmen's compensation cases and correctly concluded that Mrs. Broussard was in the course of her employment at the time her injuries were sustained.
Therefore, we hold that the exclusion relieved Travelers of any liability to plaintiffs.
However, plaintiffs argue that because the exclusion was not physically attached to or written into the excess policy, Interstate cannot assert it as a defense. They rely primarily upon La.R.S. 22:628, which provides:
"No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless in writing and made a part of the policy. This Section shall not apply to the contracts as provided in Part XV of this Chapter."
The plain meaning of the statute seems to render invalid any agreement modifying the coverage of an insurance contract unless it is somehow physically made a part of the policy. This section of the Insurance Code appears to have the same purpose as many other sections which require that, in order to have effect, applications, by-laws, or other instruments must be made a part of the policy by attachment, endorsement or some other method.
La.R.S. 22:219 provides, in pertinent part:
"A. The falsity of any statement in the application for any policy covered by this Part shall not bar the right to recovery thereunder unless such false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer. The insured shall not be bound by any statement unless made in a written application in the case of domestic industrial insurers, and in the case of other insurers, unless a copy of such application is attached to or endorsed on the policy as a part thereof. (Emphasis added.)
"* * *."
La.R.S. 22:618 provides, in pertinent part:
"A. No application for the issuance of any insurance policy or contract shall be admissible in evidence in any action relative to such policy or contract, unless a correct copy of the application was attached to or otherwise made a part of the policy, or contract, when issued and delivered. This provision shall not apply to policies or contracts of industrial insurance subject to R.S. 22:213A(1) and 22:259(2). (Emphasis added.)
*831 "* * *."
La.R.S. 22:624 provides, in pertinent part:
"A. The written instrument, in which a contract of insurance is set forth, is the policy.
"B. A policy shall specify:

"* * *
"(6) The conditions pertaining to the insurance. (Emphasis added.)
"* * *."
La.R.S. 22:626 provides:

"No policy shall contain any provision purporting to make any portion of the articles of incorporation, by-laws, or other constituent document of the insurer a part of the contract unless such portion is set forth in full in the policy. Any policy provision in violation of this Section shall be invalid." (Emphasis added.)
La.R.S. 22:654 provides:
"Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy."
Defendant Interstate, on the other hand, argues that by enacting La.R.S. 22:628, the legislature intended that contracts of insurance may consist of a policy and other instruments incorporated therein by reference. Defendant's argument is based solely on the choice of words in several other sections of the Insurance Code. In essence, it contends that the use of the disjunctive "attached to or made a part of the policy" in Section 654, the words "attached to or otherwise made a part of the policy" in Section 618(A), and the phrase "attached to or endorsed on the policy as a part thereof" in Section 219(A) shows that documents may be made a part of an insurance policy without being physically attached thereto. Consequently, defendant Interstate concludes, these statutes demonstrate a legislative approval of the doctrine of incorporation by reference with regard to insurance policies.
We are unable to find such an intention in the language quoted by the defendant, but conclude that if the legislature had meant to allow the incorporation of applications, by-laws, statements, agreements or other instruments by reference it would have so stated. Instead, we believe it evinced a contrary intent when it insisted in each instance that such addenda must be attached to or made part of the policy in order to have any effect. By using disjunctive phrases in some instances, such as "attached to or otherwise made a part of the policy," the legislature intended to allow for more than one means of making other instruments a part of an insurance policy. For example, an instrument may be attached by affixing a photocopy of it to the policy, or it may be imprinted upon the policy itself through typing, handwriting or other methods. In each case, however, it is clear that the essence of the instrument must physically become a part of the insurance policy in order to have any validity.
The legislative history of the Insurance Code, the jurisprudence of this State and the majority of decisions in other jurisdictions support this view.
The source provision of the Insurance Code sections regulating extraneous modification of insurance contracts was Act 227 of 1916, The Entire Contract Policy Statute, which, in pertinent part, provided:
"That every policy of insurance issued or delivered within the State . . . by any life insurance corporation doing business within the State shall contain the entire contract between the parties and nothing shall be incorporated therein by reference to any constitution, by-laws, rules, application or other writings unless *832 the same are endorsed upon or attached to the policy when issued; and all statements purporting to be made by the insured shall in the absence of fraud be deemed representations and not warranties, and no statement or statements not endorsed upon or attached to the policy when issued shall be used in defense of a claim under the policy unless a copy of such statement or statements be endorsed upon or attached to the policy when issued. Any waiver of the provisions of this section shall be void." (Emphasis added.)
In Fisette v. Mutual Life Ins. Co., 162 La. 620, 110 So. 880 (1926) we emphatically held that The Entire Contract Policy Statute must be construed literally so as to require actual physical attachment of the insured's application to the policy when issued in order to avail the insurer of a defense thereon. The opinion lucidly explained the purpose of the statute:
"* * * The language of the statute is plain and vigorous in its requirement that every life insurance policy shall contain the entire contract between the parties; that nothing shall be incorporated therein by reference to the application or any other document unless the same is incorsed upon or attached to the policy;

. . . The purpose of the law is that the insured shall have in his possession during his lifetime, and that the beneficiary shall have after the death of the insured, the entire evidence of the contract. It would not serve that purpose, but would violate the spirit, if not the very letter, of the law, if the statute should be so construed that a statement made by the insured in an application for `establishing' or `placing in force' a policy that was not theretofore placed in force by the payment of the first premium need not be indorsed upon, or attached to, the policy to form a part of the contract. * * *" 110 So. at 882. (Emphasis added.)
In Louisiana our courts have consistently followed the holding in Fisette calling for rigorous enforcement of The Entire Contract Policy Statute. Shuff v. Life & Casualty Ins. Co., 164 La. 741, 114 So. 637 (1927); Whitmeyer v. Liberty Industrial L. Ins. Co., 166 La. 328, 117 So. 268 (1928) (affirming 1927) 8 La.App. 126; Oglesby v. Life Ins. Co. of Va., 12 La.App. 311, 124 So. 551 (1929); Williams v. Unity Industrial L. Ins. Co., 14 La.App. 680, 130 So. 561 (1930); Cherry v. Metropolitan L. Ins. Co., 143 So. 121 (Orl.App.1932); McBride v. Acme Industrial L. Ins. Soc, 150 So. 110 (Orl.App.1933) (affirmed 1934), 179 La. 701, 154 So. 741); Jackson v. Unity Industrial L. Ins. Co., 142 So. 207 (Orl.App.1932); Lane v. The Life Insurance Company of Virginia, 176 So.2d 202 (La.App.4th Cir. 1965). This view appears also to have been adopted by the vast majority of American states. See Annotations, 93 A.L.R. 374; 18 A.L.R.3rd 763.
Although originally restricted to policies issued by life insurance corporations, the concepts set forth in The Entire Contract Policy Statute were made applicable to most insurance policies, including automobile liability policies, with the adoption of the Insurance Code by the legislature in Act 195 of 1948. See La.R.S. 22:218; 219; 624; 626; 628; 654, supra. Consequently we have held that due to La.R.S. 22:628, which prohibits modification of the coverage of any contract of insurance, unless made in writing and as a part of the policy, the coverage under an automobile liability policy was not limited by a lease agreement which had not been annexed to the policy. Jones v. Breaux, 289 So.2d 110 (La.1974). More recently we decided that an application for health and accident insurance, which was not attached to the policy when issued, was inadmissible in evidence under La.R.S. 22:618(A) in any action relative to the policy. Smith v. North American Co. for Life Acc. and Health Ins.,306 So.2d 751 (La.1975). The Second Circuit Court of Appeal held in Tingle v. Globe Life Insurance Company, 290 So.2d 460 (La.App.2d Cir. 1974) that under La. R.S. 22:213 and La.R.S. 22:628 an insured could recover although he had signed a *833 written agreement not to purchase or to accept any insurance coverage from the insurance company, because that instrument was not attached to or made a part of the insurance policy when issued.
The statutes of some states require only that the contract of insurance be plainly expressed in the policy, while in other jurisdictions, such as Louisiana, policies of insurance must contain the entire contract. A majority of states appear to have adopted the latter view. See Couch on Insurance 2d, § 3.19. In that treatise the author states:
§ 3.20. "It is within the power of the state to require that the policy state the contract or the entire contract, or to require that the application or by-laws be attached to or made part of the policy. Such statutes come within the police power, being regarded as in the interest of sound public policy, and as not impairing the obligation of contracts, or depriving the insurer of property without due process of law.
"These conclusions naturally follow from the fact that statutes of this character are clearly intended to protect the policyholder by requiring the insurer to place in his hands written evidence of the entire contract, or, in other words, by requiring all the terms, conditions and representations, to be incorporated or embodied in the policy, and thereby largely eliminate the evils growing out of uncertainty and the imposition which might otherwise be practiced, by permitting the insured to know from his policy what his contract is. In fact, the laudable purpose is to furnish both parties the entire contract between them, and to enable them both to be informed of the exact terms of the policy.
"Such statutes also have the advantage of proclaiming uniform procedure." (Footnotes omitted.)
§ 3.21. "Under statutes in the various forms noted in the preceding section, the policy, including documents properly incorporated therein so as to form a part of the contract, constitutes the sole contract, to the exclusion of all anterior or contemporaneous agreements not contained or expressed in the policy, including conditions in the application when not properly made a part of the contract, as well as premium notes which are not made a part of the contract, a receipt given for a note representing the first premium on a policy, or a conditional receipt issued by the insurer prior to the delivery of the policy and not incorporated therein. If the statute specifies that the entire contract shall be contained in the insurance policy itself bylaws not incorporated in the policy except by reference form no part of the contract. A statute requiring a life policy to state that it and the application shall constitute the entire contract invalidates a contract for reinstatement, consisting of the application therefor, the policy, and a note given for the premium. * * *" (Footnotes omitted.)
Thus it seems clear that the legislative policy, as expressed in La.R.S. 22:628, and by similar statutes in other jurisdictions, prohibits the insurer from urging as a defense the breach of any condition which is not in some manner physically made a part of the policy. The object of the statute is to assure full notification to the insured of all relevant provisions of his insurance contract. Furthermore, the legislature has determined this object can be attained only by mandating the actual attachment of such modifying provisions to the insurance policy.
For these reasons we conclude that the exclusion in the Travelers policy, which was not attached to or otherwise physically made a part of the Interstate policy, afforded Interstate no defense against plaintiffs' claims resulting from the injuries suffered by Mrs. Broussard in the accident.
*834 Accordingly, the judgment of the court of appeal in favor of the plaintiffs and against Interstate Fire and Casualty Company is affirmed, and the judgment in plaintiffs' favor and against Travelers Insurance Company, is reversed. All costs of this appeal are assessed to Interstate Fire and Casualty Company.
AFFIRMED IN PART AND REVERSED IN PART.