368 So.2d 797 (1979)
Andrew M. TURNER, Plaintiff and Appellant,
v.
ALLSTATE INSURANCE COMPANY et al., Defendant and Appellees.
No. 13798.
Court of Appeal of Louisiana, Second Circuit.
February 20, 1979.
Booth, Lockard, Jack, Pleasant & LeSage by Fred H. Sutherland, Shreveport, for plaintiff-appellant.
Mayer, Smith & Roberts by Paul R. Mayer, Shreveport, for Fireman's Fund intervenor-appellee.
Lunn, Irion, Switzer, Johnson & Salley by Charles W. Salley, Shreveport, for Safeco Ins., defendant-appellee.
*798 Nelson & Achee by Roland J. Achee, Shreveport, for Neymond Heable, et al., defendants-appellees.
Mayer, Smith & Roberts by Caldwell Roberts, Shreveport, for Associated Indemn., defendant-appellee.
Before PRICE, HALL and JONES, JJ.
JONES, Judge.
Plaintiff, Andrew M. Turner, brings this action for damages sustained in an automobile collision on September 21, 1976, against defendants, Neymond Heable, driver of the other automobile, Allstate Insurance Company, liability insurer of Heable, Safeco Insurance Company of America, plaintiff's personal insurer for underinsured motorist's coverage, and Associated Indemnity Corporation, plaintiff's employer's insurance carrier for underinsured motorist's coverage. From a summary judgment in favor of Associated Indemnity Corporation, plaintiff appeals.
Plaintiff was operating a 1968 Chevrolet StepVan owned by his employer, American Linen Supply Services, Inc., in the course of his employment on September 21, 1976 when he alleges defendant, Heable, failed to yield to a red traffic signal as Heable proceeded easterly on Texas Street and negligently ran into plaintiff who was traveling north on Spring Street, at the intersection of Spring and Texas Streets. Plaintiff alleges the liability insurance policy of Allstate with personal injury limits of $10,000 is insufficient to cover plaintiff's personal injuries and medical expenses, thus Associated Indemnity Corporation, who had issued a liability insurance policy to plaintiff's employer, which included uninsured and underinsured motorist's coverage, is liable to plaintiff for that portion of his damages which exceed the policy limits of Allstate.
Associated Indemnity Corporation answered that the policy issued to Atur, Inc., d/b/a American Linen Service, Inc., did not provide uninsured or underinsured motorist coverage on the vehicle operated by plaintiff at the time of the accident. Associated Indemnity Corporation filed a motion for summary judgment attaching Atur, Inc.'s (American Linen) policy no. LP2409994 in force from June 17, 1976 to June 17, 1977, and Atur, Inc.'s policy no. LP2331185 in force from June 17, 1975 to June 17, 1976 and the affidavit of Harold L. Wilmes, president of Atur Services, Inc.
The documents show an endorsement forming part of and originally attached to policy no. LP2331185 dated June 17, 1975 containing a written rejection of uninsured motorist coverage for commercial units only by Harold L. Wilmes, for the policy in force from June 17, 1975 to June 17, 1976. No written rejection of uninsured motorist's coverage formed part of or was attached to the policy no. LP2409994, nor did the policy contain a written reference to a rejection of such coverage in the previous policy. This policy in force from June 17, 1976 to June 17, 1977 did contain the following: a declaration page showing a $104 premium was paid for uninsured motorist insurance, the page titled "Coverage, Part-Uninsured Motorists Insurance" showed uninsured motorist insurance was carried for "any private passenger automobile owned by the named insured"; the page titled "Schedule of Automobile and Coverage" showed premiums totalling $104 were paid for uninsured motorist coverage on four automobiles Buick Appollo, Gremlin, Buick LeSabre and Buick Electra; application form attached to and forming part of the policy stating number LP2409994 was a renewal of policy no. LP2331185. The affidavit of Harold L. Wilmes stated he had been president of Atur Services, Inc. since June 17, 1975 and he signed the Notice of Rejection of Uninsured Motorist Coverage for commercial vehicles dated June 17, 1975 which formed part of and was attached to the policy in force from June 17, 1975 to June 17, 1976.
Plaintiff filed an opposition to the motion for summary judgment contending policy no. LP2409994 contained no written rejection of uninsured motorist coverage nor any reference to a previous written rejection which deprived Associated Indemnity of the right to assert there was no uninsured motorist *799 coverage as a defense for the reason LSA-R.S. 22:628 provides any modification of coverage of any contract of insurance must be "in writing and made a part of the policy".
The trial judge in his reasons for summary judgment found the specific provisions of LSA-R.S. 22:1406(D)(1)(a) referring to uninsured motorist insurance controlled in the conflict with LSA-R.S. 22:628 a general statute referring to all types of insurance contracts. The trial court held:
". . . the uninsured motorist statute was amended by Act 494 of 1975. The amendment provides that such coverage need not be offered or provided in a renewal or substitute policy where the named insured has rejected the coverage in a former policy.
The face of the policy involved herein shows that uninsured motorist coverage was not provided on commercial vehicles, as did the attached form number XXX-XXX-X-XX. We believe the statute is clear in not requiring the coverage to be afforded on renewal policies and that once coverage has been rejected, the insurer may produce evidence of such rejection which rejection was made at the time of issuance of the former policy."
The trial court also found Act 438 of 1977 which amended LSA-R.S. 22:1406(D)(1)(a) to provide a written rejection of uninsured motorist coverage need not be physically attached to a renewal policy was procedural and should be applied retroactively.
Plaintiff assigns as error the following trial court determinations: (1) the initial written rejection of uninsured motorist coverage or reference thereto does not have to form part of or be physically attached to a renewal policy to serve as evidence of no uninsured motorist coverage in the policy, and (2) Act 438 of 1977 amending LSA-R.S. 22:1406(D) is procedural and has retroactive application.
LSA-R.S. 22:1406(D)(1)(a) as amended by Act 494 of 1975 [italicized] the pertinent statute at the time of the accident on September 21, 1976 read as follows:
"D. The following provisions shall govern the issuance of uninsured motorist coverage in this state.
(1)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury, liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer."

Defendant contends the clear terms of Act 494 of 1975 provide no uninsured motorist coverage need be offered in or supplemental to a renewal policy when the insured has rejected the coverage in a previous policy. Defendant contends it follows if no uninsured motorist coverage need be offered, the previous rejection or reference to the previous rejection is not required to be included in or attached to the renewal policy.
Plaintiff contends LSA-R.S. 22:1406(D)(1)(a) as amended by Act 494 of 1975 must be construed in light of LSA-R.S. 22:628[1] which provided at the time the policy sued upon was issued:

*800 "No agreement in conflict with, modifying, or extending the coverage of insurance shall be valid unless in writing and made part of the policy . . ."
Plaintiff contends the previous rejection or a reference to it had to physically form part of the renewal policy in force at the time of the accident for the rejection of uninsured motorist insurance to be valid. Plaintiff relies on Spain v. Travelers Insurance Co., 332 So.2d 827 (La.1976) for the proposition an exclusion must physically form part of or be attached to an insurance policy for an insurer to have a right to defend on the ground such coverage was excluded from the policy. In Spain, plaintiff was excluded from coverage by the terms of the basic policy of her employer but was allowed to recover from her employer's excess policy insurer because the excess policy merely provided "the provisions of the immediate underlying policy are incorporated as a part of this policy" without physically incorporating the terms or attaching a copy of the basic underlying policy to the excess policy as required by LSA-R.S. 22:628.
In Myers v. Thibeaux, 365 So.2d 266 (La. App. 3d Cir. 1978) the insured initially rejected uninsured motorist coverage in a 1962 policy and the court held no notice of such rejection need be physically attached to or referred to in a renewal policy delivered after the effective date of Act 494 of 1975 in order for uninsured motorist coverage to be excluded from the renewal policy. The court stated:
"Since Myers initially rejected uninsured motorist coverage in 1962, and since the last insurance delivered to him by State Farm (a renewal or substitute for the coverage provided in 1962) was on October 23, 1975, we conclude that the very terms of the uninsured motorist statute as amended, and as quoted above, bar his recovery." id p. 268
We agree with the trial court that LSA-R.S. 22:628 is not the controlling statute in this case. LSA-R.S. 22:628 is a general statute controlling provisions of insurance contracts whereas LSA-R.S. 22:1406(D)(1)(a), a part of the uninsured motorist's statute, contains the specific provision in unambiguous language that uninsured motorist coverage does not have to be offered in a renewal policy when the insured has rejected the coverage in a policy previously issued to him by the same insurer. See Teachers' Retirement System of Louisiana v. Vial, 317 So.2d 179 (La. 1975); Esteve v. Allstate Insurance Co., 351 So.2d 117 (La.1977).
Because we have determined that summary judgment was properly rendered upon the 1975 amendment to the uninsured motorist's act, we find it unnecessary to consider whether Act 438 of 1977[2] is only procedural and therefore subject to retroactive application.
For the reasons assigned, the summary judgment is AFFIRMED at appellant's cost.
NOTES
[1] LSA-R.S. 22:628 was amended in 1977 to allow incorporation by reference to policies in effect on July 10, 1977 or issued thereafter.
[2] Act 438 of 1977 (italicized) amended R.S. 22:1406(D)(1)(a) to read: "No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer. Any document signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto."